IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:21-CV-57-FL

| | |
|---|---|
| WALBRIDGE ALDINGER LLC, a Michigan Limited Liability Corporation authorized to do business in North Carolina, <br><br> Plaintiff, <br><br> v. <br><br> CAPE FEAR ENGINEERING, INC., a North Carolina Corporation, <br><br> Defendant/ <br> Third-Party Plaintiff, <br><br> v. <br><br> BURNS & MCDONNELL ENGINEERING COMPANY, INC., <br><br> Third-Party Defendant. | ORDER |

This matter is before the court on third-party defendant's motion to dismiss (DE 28) the third-party complaint filed by defendant/third-party plaintiff Cape Fear Engineering, Inc. ("defendant"). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in part.

### STATEMENT OF THE CASE

Plaintiff Walbridge Aldinger, LLC, ("plaintiff") commenced this action in Brunswick County Superior Court on February 24, 2021, asserting a breach of contract claim against defendant arising out of defendant's allegedly deficient surveying work completed as part of a

federal construction project at Seymour Johnson Air Force Base (the "project"). Plaintiff seeks actual, contractual, statutory, punitive, or treble damages, plus interest, costs, and fees.

Defendant filed a notice of removal on the basis of diversity jurisdiction and an answer, in April 2021. With leave of court, defendant thereafter filed a third-party complaint against third-party defendant, which is an engineering company that allegedly prepared plans for the project that defendant used to conduct its surveying work under its contract with plaintiff.[1] Defendant asserts claims for breach of standard of care (first claim), indemnity and contribution (second claim), and negligence (third claim). Defendant seeks damages, costs, and fees against third-party defendant. As relief, defendant also requests that plaintiff's claims against defendant be dismissed, and that if plaintiff recovers against defendant, then defendant have and recover against third-party defendant by way of contribution and indemnity.

Third-party defendant filed the instant motion to dismiss the third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant responded in opposition and third-party defendant replied.

<b>STATEMENT OF THE FACTS</b>

The facts alleged in the complaint and the third-party complaint may be summarized as follows. The court provides a summary of the facts alleged in the complaint for background purposes only as pertinent to the instant motion.

A.  Complaint

Plaintiff is a Michigan company that provides general contracting services on construction projects. Defendant is a North Carolina company that provides surveying services. The project at

---

[1] In the meantime, the court entered a case management order setting a May 23, 2022, deadline for discovery and a July 22, 2022, deadline for dispositive motions.

Seymour Johnson Air Force Base, involved the construction of a "Two Bay Corrosion/Fuel Cell Hanger." (Compl. Ex. 1 (DE 1-1) at 13).

On December 7, 2017, plaintiff and defendant entered into a "Consulting Subcontract" under which defendant agreed to provide "Surveying work for [the] project" (the "surveying contract"). (Compl. ¶¶ 11-12). The scope of work for the surveying contract included the following work:

> Piling staking
>
> a.  Stake the Test piles for the hanger 60-penny nails and numbered pin flags during 1 mobilization
>
> b.  Stake the production piles for the hanger using 60-pennynails and numbered pin flags during 2 mobilizations
>
> c.  Provide a post cut-off pile as-built, showing the location and elevation of each pile for use by others during 3 mobilizations
>
> d.  Anchor bolt checks/verification during 4 mobilizations.

(Id. ¶ 12). The surveying contract allegedly incorporated "Contract Documents" that included a "Structural Plan S001 General Notes at 1.G.," providing: "ELEVATION 100'-0" CORRESPONDS TO MSL ELEVATION 103.50." (Id. ¶ 13). According to the complaint, the surveying contract required defendant "to know the correct elevation to use to complete its work" in accordance with the surveying contract. (Id. ¶ 18).

Defendant "began on-site surveying pile layout work on May 17, 2018." (Id. ¶ 21). Defendant allegedly "was required to place pins at the design location for each pile to be drilled in accordance with the contractors [sic] sequence." (Id. ¶ 22). "Each pin was to include a flag listing the pile number, the existing elevation of the pin at mean sea level, and the design pile cut off elevation." (Id. ¶ 23). Defendant allegedly "placed pins with flags that contained the incorrect elevations at the design locations for 189 of 535 piles." (Id. ¶ 24).

3

"[O]f the 189 piles impacted by [defendant's alleged] error in surveying and noting of the elevations, approximately 160 piles were installed at the incorrect elevation."  (Id. ¶ 25). Defendant allegedly "failed to adjust the elevations in performing its surveying to account for the Structural Plan S001 General Note l.G. which provided 'ELEVATION 100'-0" CORRESPONDS TO MSL ELEVATION 103.50.'"  (Id. ¶ 26).

According to the complaint, defendant's "surveying elevations were determined using the structural elevation of l00'-0" instead of converting the structural elevation to MSL elevation of 103.50" [sic]."  (Id. ¶ 27).  Defendant's alleged "failure to use the correct elevation resulted in the surveying for 189 piles using an elevation that was 3.5" too low."  (Id. ¶ 28).

Plaintiff allegedly notified defendant in writing on July 24, 2018, "of the incorrect pile cutoff elevations."  (Id. ¶ 29).  According to the complaint, "incorrectly surveyed and installed piles had to be redesigned and required the use of 71 tons of rebar, 350 cubic yards of concrete, and 5,024 cubic yards of additional back fill which doubled the original contract scope for the impacted areas."  (Id. ¶ 30).  "To correct the incorrectly surveyed and installed piles exposed excavation and dewatering was required throughout the process."  (Id. ¶ 31).  "The critical path for the project [allegedly] was impacted by [defendant's] incorrectly surveyed and installed piles."  (Id. ¶ 32).  "The impact on the critical path increased the project general conditions by at least [$3,300.00] each day."  (Id. ¶ 33).

According to the complaint, defendant breached the surveying contract by "failing to use the degree of care and skill ordinarily exercised by surveyors by failing to account for the correct elevation for mean sea level," "failing to be aware of Structural Plan S001 General Note 1.G," "failing to complete its work in accordance with" the surveying contract, and in other ways which may be discovered.  (Id. ¶¶ 36-40). As a result of defendant's asserted breaches of the surveying

4

contract, plaintiff suffered economic damages in excess of $25,000.00, "including but not limited to the cost to remediate the erroneous elevations for at least 160 piles, increased daily costs of construction, liquidated damages from the owner of the project, and delay claims from other subcontractors," and plaintiff "has suffered and continues to suffer monetary losses." (Id. ¶¶ 41, 42).

B.  Third-Party Complaint

According to the third-party complaint, defendant was engaged in providing surveying and consulting work on construction projects within North Carolina. Third-party defendant was an engineering company engaged in providing and preparing design plans and drawings for use on construction projects.

Plaintiff and defendant entered into the surveying contract, under which defendant was to provide surveying work. "The plans that [defendant] used were prepared by" third-party defendant (hereinafter, the "plans"). (Third-Party Compl. ¶ 12). Mean Sea Level ("MSL") "elevation is the standard elevation used on United States federal projects." (Id. ¶ 13). "The plans contained an inconspicuous note regarding changes to standard MSL surveying elevation." (Id. ¶ 14). "The note was not bolded, enlarged, highlighted, distinguished, or in any other way called to [defendant's] attention." (Id. ¶ 15). "Plaintiff's complaint alleges [defendant] used incorrect surveying elevations resulting in damages to [p]laintiff." (Id. ¶ 16).

According to the third-party complaint, which incorporates by reference defendant's answer, "[d]efendant used certain structural elevations, including 100'0" and 103.5", in the course of its work and denies that doing so was a breach of its contractual duties or standard of care." (Answer (DE 12) ¶ 27). Defendant denies that it "failed to use the correct elevation." (Id. ¶ 28).

5

Defendant alleges it was "not made aware of any changes to" MSL. (Third-Party Compl. ¶ 18). According to the third-party complaint, "[i]t is rare that MSL is not used on federal projects and any deviation from the standard should have been prominently noted." (Id. ¶ 19). Third-party defendant allegedly is "bound by the duties owed to" defendant to:

>    a. conspicuously mark any deviations from the standard industry practice included in plans prepared by them;
>
>    b. to follow standard industry practice in preparing plans which other persons would use and rely upon;
>
>    c. to prepare plans which are in compliance with the rules and regulations governing engineers operating in North Carolina including, but not limited to, any and all Federal rules, laws, and regulations governing the operation of professional engineers, any and all Federal rules, laws, and regulations governing the preparation and drafting of construction plans, the North Carolina building code and regulations, any and all local building codes for Brunswick County, North Carolina, The North Carolina Engineering and Land Surveying Act, the Rules of Professional Conduct, or those rules and regulations promulgated by the Engineering Board;
>
>    d. to use ordinary and reasonable care to prepare plans which will be used and relied upon by others;
>
>    e. to act as a reasonably prudent person in preparing plans which will be used and relied upon by others; and
>
>    f. in such other ways as will be proven through discovery or at a trial in this matter.

(Id. ¶ 20). Third-party defendant allegedly "breached the standard of care by not bolding, enlarging, highlighting, distinguishing, or otherwise calling attention to the note altering the use of the standard MSL elevation on the plans." (Id. ¶ 21). The complaint filed against defendant allegedly "is a result of the breach of standard of care" by third-party defendant. (Id. ¶ 22).

## COURT'S DISCUSSION

A.   Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.     Analysis

   1.     Indemnity and Contribution

Third-party defendant argues that defendant's indemnity and contribution claims fail as a matter of law because of the absence a contract between defendant and third-party defendant, and because of the absence of any tort claim brought by plaintiff. The court agrees.

Under North Carolina law, an indemnity claim may be based on one of three grounds: (1) an "express agreement," (2) a contract "implied-in-fact," and (3) a contract "implied-in-law." Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C., 362 N.C. 269, 275 (2008); Hunsucker v. High Point Bending & Chair Co., 237 N.C. 559, 564 (1953). "[C]ontracts implied in fact are true contracts based on consent." Hunsucker, 237 N.C. at 564. A "contract implied in law" is derived "from the circumstance that the passively negligent tort-feasor had discharged an obligation for which the actively negligent tort-feasor was primarily liable." Id.

With respect to contribution, "[a]n original defendant may not invoke the statutory right of contribution against another party in a tort action unless both parties are liable as joint tortfeasors to the plaintiff in the action." Clemmons v. King, 265 N.C. 199, 201 (1965). "In order for one

7

defendant to join another as a third-party defendant for the purpose of contribution, he must allege facts sufficient to show joint tortfeasorship and his right to contribution in the event plaintiff recovers against him." Id. at 202 (emphasis in original).[2]

Here, there is no indemnity based upon an express agreement, where none is alleged. With respect to a contract implied-in-fact, defendant has not alleged any contractual relationship, oral or otherwise, between defendant and third-party defendant. This is fatal to defendant's claim on this basis. See Hunsucker, 237 N.C. at 564. In addition, defendant has not alleged that it is a "negligent tort-feasor," where there is no underlying claim for a tort by plaintiff against defendant, but rather only a breach of contract claim by plaintiff. Id. Similarly, defendant's contribution claim fails where defendant does not allege "both parties are liable as joint tortfeasors to the plaintiff in the action." Clemmons, 265 N.C. at 201. Accordingly, defendant's indemnity and contribution claims fail as a matter of law.

Defendant's arguments to the contrary are unavailing. For example, defendant cites to the North Carolina Court of Appeals opinion in Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C., 180 N.C. App. 257 (2006), for the proposition that the court must "look to the parties' relationship and its surrounding circumstances" to determine whether there is a contract implied-in-fact. Id. at 267. Schenkel, however, does not alter the general rule that "contracts implied in fact are true contracts based on consent." Hunsucker, 237 N.C. at 564. Circumstances in Schenkel are inapposite where the parties' relationship there was governed by an express contract, and an "independent contractor agreement." 180 N.C. App. at 267. Defendant here alleges no contractual relationship between it and third-party defendant.

---

[2]   Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

8

Case 7:21-cv-00057-FL   Document 36   Filed 01/31/22   Page 8 of 18

Defendant also argues that it has alleged indemnity by contract implied-in-law because it has alleged that third-party defendant "breached the professional standard of care." (Resp. (DE 30) at 11). Notably absent, however, is any underlying claim that <u>defendant</u> was a "passively negligent <u>tort-feasor</u>." <u>Hunsucker</u>, 237 N.C. at 564 (emphasis added). Defendant thus has not pleaded a claim for "contract implied in law." <u>Id.</u>

Defendant also cites to <u>Mumford v. Apple Polishing Sys. of Tidewater, Inc.</u>, No. 2:05-CV-45-BR(3), 2006 WL 8438460 (E.D.N.C. Apr. 3, 2006), for the proposition that "when the conduct of two different parties breaches substantially equal duties owed to a plaintiff, either of those parties may sue the other for contribution." <u>Id.</u> at *2. As such, defendant argues, it is sufficient that defendant allegedly breached a contract duty to plaintiff, and that third-party defendant also breached a duty to plaintiff by negligently preparing plans commissioned by plaintiff. (Resp. (DE 30) at 7). <u>Mumford</u>, however, does not alter the general rule that contribution requires "<u>joint</u> tortfeasorship</u>," <u>Clemmons</u>, 265 N.C. at 201, and indeed <u>Mumford</u> cites <u>Clemmons</u> for just that proposition. 2006 WL 8438460 at *2. There is no underlying tort claim in this case against defendant.

In sum, defendant fails to state a claim for indemnity or contribution under North Carolina law. Therefore these claims must be dismissed as a matter of law.

    2.    Breach of Standard of Care and Negligence

        a.    Statement of Claim

Third-party defendant argues that defendant fails to state a claim for breach of standard of care and negligence. The court disagrees, insofar as the breach of standard of care and negligence claims are limited and construed as set forth herein.

"To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." Fussell v. N. Carolina Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226 (2010). "The duty may arise . . . generally by operation of law under application of the basic rule of the common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to endanger the person or property of others." Pinnix v. Toomey, 242 N.C. 358, 362 (1955). In the construction context, a claim of professional negligence may be based upon "providing nonconforming and defective work" and failing to "perform duties . . . in accordance with the standard of care for contractors in the community." Jonesboro United Methodist Church v. Mullins-Sherman Architects, L.L.P., 359 N.C. 593, 597 (2005); see, e.g., Handex of Carolinas, Inc. v. Cty. of Haywood, 168 N.C. App. 1, 10–11 (2005) (claim of professional negligence against engineer); Davidson & Jones, Inc. v. New Hanover Cty., 41 N.C. App. 661, 666 (1979) (claim of negligence against architect for "breach of a common law duty of care").

In this case, defendant has stated a claim for negligence against third-party defendant, in the form of defendant's claim for "breach of standard of care" (first claim) and negligence (third claim), (Third-Party Compl. pp. 3 & 6), which are overlapping and redundant as set forth herein. First, defendant alleges that third-party defendant is an engineering company bound by duties to "conspicuously mark any deviations from the standard industry practice," "to follow standard industry practice in preparing plans," "to prepare plans . . . in compliance with the rules and regulations governing engineers," and "to use ordinary and reasonable care to prepare plans," among other duties. (Id. ¶ 20; see id. ¶¶ 27-28). This satisfies the element of alleging a legal duty owed. See Fussell, 364 N.C. at 226; Pinnix, 242 N.C. at 362.

10

Second, defendant alleges that third-party defendant breached this standard of care "by not bolding, enlarging, highlighting, distinguishing, or otherwise calling attention to the note altering the use of the standard MSL elevation on the plans." (Third-Party Compl. ¶ 21; see id. ¶¶ 28-29). This satisfied the element of alleging a breach of the duty of care. See Fussell, 364 N.C. at 226; Jonesboro United Methodist Church, 359 N.C. at 597.

Third, defendant alleges injury in the form of the "Complaint filed" by plaintiff against it, which allegedly is "a result of the breach of standard of care" by third-party defendant. (Third-Party Compl. ¶ 22). Likewise defendant asserts that "[i]f the alleged damages complained of by Plaintiff . . . are found to exist, then said damages were caused by [third-party defendant's] negligence." (Id. ¶ 29). Facts alleged in the complaint give rise to a plausible inference that third-party defendant caused this injury, because "[p]laintiff's complaint alleges [defendant] used incorrect surveying elevations resulting in damages to [p]laintiff," and defendant alleges third-party defendant did not correctly note changes to the "standard MSL surveying elevation." (Third-Party Compl. ¶¶ 14, 16).

In sum, the third-party complaint sufficiently states a claim for negligence. Henceforth, the court construes the two claims denominated "breach of standard of care" (first claim) and negligence (third claim), (Third-Party Compl. pp. 3 & 6), as a single claim for negligence. Third-party defendant nonetheless argues that defendant fails to state any claim for negligence because "the breach of standard of care and negligence claims are claims for indemnity and/or contribution masquerading as independent tort claims." (Mem. (DE 29) at 11). The court, however, already has addressed defendant's indemnification and contribution claims and determined that they fail as a matter of law. The negligence, claim, by contrast stands on its own terms and it meets the required elements of a negligence claim. Therefore, dismissal on this basis is not warranted.

In one additional part, however, the court agrees with third-party defendant that a portion of the claim defendant labels as its "negligence" claim is no more than a restatement of its indemnification and contribution claims. In particular, defendant alleges:

> 30. If Cape Fear is found to have been negligent in any respect, which is again denied, then its negligence was passive and secondary and arose solely from the negligence of others, including Burns, with respect to any liability which may be adjudged against Cape Fear in favor of Plaintiff and, therefore, Cape Fear is entitled to indemnification from Burns.
>
> 31. Alternatively, if Cape Fear is found to have been negligent in any respect, which is denied, then the negligence of Burns was a joint or concurring cause of the damage allegedly sustained by Plaintiff and, therefore, Cape Fear is entitled to contribution from Third-Party Defendant.

(Third-Party Compl. ¶¶ 30-31). These assertions are not necessary for any element of defendant's negligence claim, and they are insufficient to state a claim for indemnification or contribution for the reasons stated above. Accordingly, these asserted parts of defendant's negligence claim are dismissed in conjunction with defendant's contribution and indemnification claims.

Third-party defendant also argues that the "economic loss rule" bars "each of" defendant's claims. (Reply (DE 31) at 9). Apart from that assertion, most of third-party defendant's argument regarding the economic loss rule focuses on defendant's claims for contribution and indemnification. (See id. at 8-9; Mem. (DE 29) at 8-11). Where the court already has dismissed those claims, the court does not address application of the economic loss rule to them.

In any event, the economic loss rule does not bar defendant's negligence claim as delimited herein. "[T]he economic loss rule bars recovery in tort by a plaintiff against a promisor for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill." Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc., 376 N.C. 54, 58 (2020). Here, however, defendant does not assert a negligence claim against third-party defendant "for [its] simple failure to perform [its] contract." Id. Rather, defendant asserts its negligence claim based

12

upon a failure to exercise a duty of care as specified in the third-party complaint. (See, e.g., Third-Party Compl. ¶¶ 20, 21, 28). Indeed, defendant does not allege the terms of any contract between plaintiff and third-party defendant. (See id. ¶ 12).

Moreover, Crescent is instructively distinguishable from the instant case. There, the plaintiff was an owner and developer of property, which entered into a general contact to construct buildings on the property with a general contractor. That general contractor entered into a subcontract with a framing subcontractor, which procured trusses from a manufacturer. The court held that the economic loss rule barred the plaintiff from bringing a negligence claim against the manufacturer for fabricating defective trusses, where the plaintiff had "contract[ed] for the construction of [the] building, and thereby possesses a bargained-for means of recovery against [the] general contractor." 376 N.C. at 55. The court reasoned that the plaintiff "negotiated with [the contractor] for the construction of . . . buildings with the full knowledge of and power to control the acquisition and engagement of subcontractors for the various roles within the greater construction scheme." Id. at 63. In addition, the plaintiff "failed to present sufficient evidence showing the breach of any duty other than the contractual duties contained within the purchase order" for the defective trusses. Id. at 57-58.

The instant case is distinguishable on each of these grounds. First, defendant is not an owner that contracted for construction of buildings, and it did not possess a bargained-for means of recovery against any party working for it. Second, there is no allegation that it negotiated for the construction at the project with power to control acquisition and engagement of subcontractors. Third, plaintiff has alleged a breach of a duty other than any contractual duties binding upon third-party defendant. Accordingly, Crescent is inapposite. See, e.g., New Dunn Hotel, LLC v. K2M Design, Inc., No. 5:20-CV-107-FL, 2021 WL 1910033, at *4–5 (E.D.N.C. May 12, 2021) (holding

economic loss rule as articulated in Crescent inapplicable to negligence claim by hotel owner against architect, where hotel operator contracted with architect but owner did not).

In sum, defendant states a claim for negligence against third-party defendant. Therefore, third-party defendant's motion to dismiss in that part is denied. In remaining part, however, where defendant's negligence claim is redundant, or where it restates its contribution or indemnification claims, the claim must be dismissed, and defendant's motion to dismiss in that part is granted.

        b.        Rule 14

Third-party defendant's remaining argument in favor of dismissal of all of defendant's claims is that they are not properly impleaded under Rule 14. Where the court has already dismissed defendant's contribution and indemnification claims, the court addresses this argument solely as it pertains to defendant's negligence claim that has not been dismissed.

Under Rule 14, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "The purpose of third-party procedure is to prevent circuity of action by drawing into one proceeding all parties who may become ultimately liable, so that they may therein assert and have a determination of their various claims inter sese." Am. Exp. Lines, Inc. v. Revel, 262 F.2d 122, 124–25 (4th Cir. 1958). "This is intended to save the time and cost of duplicating evidence and to obtain consistent results from identical or similar evidence, as well as to avoid the serious handicap of a time lag between a judgment against the original defendant and a judgment in his favor against the third-party defendant." Id. at 125.

Although the United States Court of Appeals for the Fourth Circuit has not detailed criteria for application of this rule in a published opinion, it has stated in an unpublished opinion that "the third-party claim must be 'derivative' of the plaintiff's claim for '[d]erivative liability is central to

14

the operation of Rule 14.'" Scott v. PPG Indus., Inc., No. 89-2362, 1990 WL 200655 *3 (4th Cir. Dec. 13, 1990) (quoting Watergate Landmark Condominium Unit Owners' Association v. Wiss, Janey, Elstner Associates, Inc., 117 F.R.D. 576, 578 (E.D.Va.1987)). In other words, "a third-party claim may be asserted only when the third party's liability is in some way dependant [sic] on the outcome of the main claim and the third party's liability is secondary or derivative." Id. (quoting United States v. One 1977 Mercedes Benz, 708 F.2d 444, 452 (9th Cir.1983)).

Under this "derivative liability" interpretation of Rule 14, "[i]t is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim." Id. (quoting One 1977 Mercedes Benz, 708 F.2d at 452). "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against defendant by the original plaintiff." 6 Charles A. Wright, et al., Fed. Prac. & Proc. § 1446 (3d ed.). Nevertheless, "[t]he third-party claim need not be based on the same theory as the main claim." Id.

Here, defendant's negligence claim is derivatively based on plaintiff's original claim, because it is dependent upon the outcome of that claim. In particular, defendant states in the third-party complaint that "[p]laintiff's complaint alleges [defendant] used incorrect surveying elevations resulting in damages to [p]laintiff." (Third-Party Compl. ¶ 16). In turn, defendant alleges that "[t]he Complaint filed against [defendant] is a result of the breach of standard of care by [third-party defendant]." (Id.¶ 22). Further, defendant alleges that "[i]f the alleged damages complained of by [p]laintiff, and denied by [defendant], are found to exist, then said damages were caused by [third-party defendant's] negligence." (Id. ¶ 29) (emphasis added). In that respect, defendant's negligence claim is dependent upon plaintiff's claim as the basis for damages.

Therefore, defendant's negligence claim is derivative of plaintiff's claim and properly impleaded under Rule 14.

Third-party defendant argues that defendant's claim is not derivative because "liability on [defendant's] Tort Claims against [third-party defendant] could be adjudicated without ever considering the issue of whether [defendant] breached its contract with [plaintiff]." (Mem. (DE 29) at 3; Reply (DE 31) at 4). This, however, is not how defendant's claim is stated against third-party defendant. Rather, as noted above, the negligence claim depends upon "[t]he Complaint filed against [defendant,]" and upon the allegation that "[i]f the alleged damages complained of by [p]laintiff, and denied by [defendant], are found to exist, then said damages were caused by [third-party defendant's] negligence." (Id. ¶ 29) (emphasis added).

Third-party defendant cites to FCCI Ins. Co. v. DS Mech. Contractors, Inc., No. EP-16-CV-495-PRM, 2017 WL 11218982, at *3 (W.D. Tex. July 25, 2017), and Watergate, 117 F.R.D. at 577, for the proposition that "the mere fact that a third party's alleged violation of a legal right is the but-for cause of the primary claim's maturation is insufficient to support impleader." (Mem. (DE 29) at 6). Here, however, defendant does not merely allege that third-party defendant's negligence is a but for cause of plaintiff's claim. Rather, defendant also alleges that plaintiff's complaint, and any damages found to exist under that complaint, are the basis for its injury and damages. (See, e.g., Third Party Compl. ¶¶ 22, 29). In this respect, third-party defendant's liability meets the Fourth Circuit's test of being "in some way dependant [sic] on the outcome of the main claim." Scott, 1990 WL 200655 at *3.

Cases cited by third-party defendant are instructively distinguishable. In FCCI, for example, the defendants brought multiple claims against a third-party defendant "based on separate contractual agreements with [that third-party defendant] for construction work," where "[n]one of

16

the claims stem[med] from the indemnity contract between Plaintiff and Defendants at issue in [the underlying] matter." Id. at *4. In Branch Banking & Tr. Co. v. Meridian Holding Co., LLC, No. CV 3:18-0486, 2019 WL 5957204 (S.D.W. Va. Nov. 12, 2019), the primary claim was to collect on a promissory note and the defendant sought to implead an insurance company that allegedly failed to repair damage to the property securing the note, which the court deemed "entirely unconnected." Id. at *4. In Watergate, the plaintiff was a property owner which brought a primary negligence claim for an engineer's defective specifications for repair of balconies, whereas the proposed third-party claim by the engineer was against a contractor for negligent performance of the repairs, 117 F.R.D. at 577, circumstances opposite to that here.

Third-party defendant also argues that litigating plaintiff's claims and third-party defendant's claims "would only serve to confuse the issues." (Reply (DE 31) at 4). This argument is unpersuasive for two reasons. First, the civil rules provide means for adjudicating in one proceeding different claims, theories of liability, and defenses, based upon a common core of operative facts. The court may structure proceedings or order the presentation of evidence to facilitate efficient adjudication, if necessary. See Fed. R. Civ. P. 1, 14(a)(4), 16, 26(b), 42, and 49. Second, the court also is mindful of the Fourth Circuit's statement that impleader "is intended to save the time and cost of duplicating evidence and to obtain consistent results from identical or similar evidence." Am. Exp. Lines, Inc., 262 F.2d at 124 (emphasis added). Here, adjudication of both plaintiff's claim and defendant's claim likely will require detailed discovery and inquiry into the sufficiency of the plans. (See, e.g., Third-Party Compl. ¶ 14; Compl. ¶¶ 13-19). The purposes of Rule 14 would not be served by developing facts concerning the plans in one case and then considering the same plans in another case, where they are central to evaluating both plaintiff's claim and defendant's claim.

## CONCLUSION

Based on the foregoing, third-party defendant's motion to dismiss (DE 28) is GRANTED IN PART and DENIED IN PART. Defendant's contribution and indemnification claims are DISMISSED WITHOUT PREJUDICE. Defendant's negligence claim, as defined and delimited herein, is allowed to proceed.

SO ORDERED, this the 31st day of January, 2022.

LOUISE W. FLANAGAN
United States District Judge